UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

N⁰ 09-CV-4246 (JFB)

---

REBECCA L. TEMKIN,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

Defendant.

---

**MEMORANDUM AND ORDER**
January 4, 2011

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Rebecca Temkin (hereinafter "plaintiff") brings this action, pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of defendant Commissioner of the Social Security Administration (hereinafter "Commissioner") partially denying the plaintiff's application for Disability Insurance Benefits ("DIB"). The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes defendant's motion and cross-moves for judgment on the pleadings, alleging that the Administrative Law Judge ("ALJ") did not consider substantial evidence demonstrating plaintiff was disabled as of May 6, 1999, failed to explain how he arrived at February 25, 2004, as plaintiff's disability onset date, and failed to consider a listing of medical categories under binding federal regulations

that suggested that plaintiff's condition prior to February 25, 2004, qualified as a disabling condition. For the reasons that follow, defendant's motion is granted and plaintiff's motion is denied.

I. BACKGROUND

A. Facts

Plaintiff alleges that she became disabled on May 6, 1999 as a result of medical conditions including "anxiety, attention deficit disorder, pseudohypoparathyroidism, neck and knee pain, [and] bilateral carpal tunnel syndrome." (Administrative Record ("AR") at 66.) The following summary of facts is based upon the administrative record as developed by the ALJ to assess plaintiff's physical and mental state. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

1. Vocational and Other Evidence

Plaintiff was born on August 18, 1980. (*Id*. at 345.) She is a high school graduate, but received a non-Regents diploma and needed remedial help to graduate. (*Id*. at 345, 368.) Plaintiff attempted college, but withdrew or received an incomplete in almost every class and thus never graduated. (*Id*. at 355-356.) She has always resided with her parents. (*Id*. at 344.)

Between 1996 and 2004 plaintiff worked as a cashier at Stop and Shop, Waldbaums, Best Get Market, Bob's Stores, Manchu Wok, and Gymboree. (*Id*. at 50-53, 76, 82, 350-51.) According to Marc Temkin, plaintiff's father, "that was not a particularly bad period" for plaintiff. (*Id*. at 365.) Mr. Temkin testified that plaintiff's "problems seemed to get worse" as she got older, particularly focusing on 2004 when plaintiff had a number of jobs for only a few weeks each. (*Id*.) In 2004 plaintiff received vocational training for medical billing and clerk typing. (*Id*. at 365.) After receiving this degree, plaintiff briefly held a clerical position in a doctor's office performing medical billing. (*Id*. at 67, 82.) Plaintiff was unemployed for much of 2005, solely holding a clerical job at an insurance office for three days in March. (*Id*. at 67, 349.) In September 2005 plaintiff began working as a page in the Sachem Public Library. (*Id*. at 347-48.) She continued working at this job at reduced hours as of the March 17, 2008, hearing before the ALJ. (*Id*. at 347-48, 367.)

2. Medical Evidence

a. Treating Physician

Plaintiff began psychiatric treatment with Dr. Joel H. King, M.D., on May 6, 1999, the date on which she alleges that she became disabled. (*Id*. at 163.) In his report to the New York State Office of Temporary and Disability Assistance, dated July 14, 2005, Dr. King stated that plaintiff described herself as "depressed for the past two years" at their initial visit. (*Id*.) At that point, she had already been diagnosed and treated for pseudohypoparathyroidism, an endocrine disorder that affected her physical and emotional development. (*Id.*) During her initial visit with Dr. King, plaintiff demonstrated no suicidal or homicidal thoughts. (*Id*. at 164.) Dr. King noted no evidence that showed plaintiff possessed any formal thought disorder, auditory hallucinations or other perception disorders, and Dr. King stated that plaintiff did not experience delusions or paranoid thoughts. (*Id*.) Dr. King further noted that, although plaintiff's "mood was depressed and moderately irritable," "[a]t the time of the initial evaluation, [plaintiff's] mental status demonstrated that she was alert and fully oriented. Her speech was fluent and goal directed. . . . The patient's memory was grossly intact." (*Id*.) Plaintiff's "insight was superficial and her judgment considered to be fair." (*Id*.) Dr. King diagnosed plaintiff with "clinical endogenous depression as well as a developmental disorder." (*Id*.) Plaintiff's treatment consisted of psychotherapy, family consultation, and appropriate medication. (*Id*.) Dr. King described the various medications prescribed to plaintiff over time to manage her condition. At least some of the medications "allowed [plaintiff] to maintain better focus and . . . increased [her]

2

ability to stay on task" at work. (*Id.*) It was not until the office visit of May 2, 2005, that Dr. King modified plaintiff's treatment plan, concluding that "attempts at pursuing gainful employment were curtailed." (*Id.* at 165; *see also id.* at 164.) Plaintiff continues to see Dr. King on a regular basis. (*Id.* at 164, 174, 323.)

Beginning in August 2000 plaintiff also received psychotherapy from Barbara King, M.S., C.S.W. (*Id.* at 333). Plaintiff started seeing Ms. King after having panic attacks at work. (*Id.*) According to Ms. King, plaintiff has been unable to "maintain a steady job, finding it too stressful" and that plaintiff's "psychiatric illness . . . makes [it] difficult for her to be gainfully employed . . . ." (*Id.*) Plaintiff stopped seeing Ms. King in 2004. (*Id.* at 174.)

Plaintiff was treated not only for psychiatric, but also physical impairments. Plaintiff was first seen by Moris Angulo, M.D., on September 10, 1991, to be treated for pseudohypoparathyroidism and hypothyroidism. (*Id.* at 132.) In a report submitted in April 2005 to the New York Office of Temporary and Disability Assistance, Dr. Angulo described plaintiff's condition as "life-long" and stated that plaintiff could occasionally lift and carry an unspecified amount, was limited to standing and/or walking for two hours per day, was not limited sitting, and had restrictions with pushing, pulling, and manipulation due to a distortion of muscle tissue, known as contractures, as a result of muscle spasms. (*Id.* at 132-33; 138-39.) Dr. Angulo's assessment of plaintiff's limitations remained the same in an updated report submitted in August 2005. (*Id.* at 123-31.)

Plaintiff also had a history of headaches and underwent a neurologic evaluation in September 2003. (*Id.* at 229-36.) Richard A. Pearl, M.D., and Bruce R. Mayerson, M.D., believed that she was suffering from common migraine, but were reluctant to increase her medication (Inderal) given her history of severe depression. (*Id.* at 230.) In addition, the doctors ordered "EMG and nerve conduction studies" because of numbness and tingling in plaintiff's hands and chronic neck pain. (*Id.*) The testing did not reveal cervical radiculopathy, but there were findings that were consistent with "mild/moderate left cubital tunnel syndrome and mild right carpal tunnel syndrome." (*Id.* at 234.)

Plaintiff began to see Gerard D. D'Ariano, M.D., for neck pain on May 25, 2004. (*Id.* at 156.) Plaintiff was eventually diagnosed with a degenerative herniated disc and cervical radiculopathy, which caused her pain in her neck and shoulder. (*Id.* at 148-54.)

b. Consulting Physicians

At the request of the Social Security Administration, plaintiff underwent psychiatric evaluations on July 28, 2005, and December 15, 2005. Bruce Nyfield, Ph.D., conducted the first examination and found plaintiff's results were consistent with her reported psychiatric problems but "this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.* at 177.) Dr. Nyfield diagnosed plaintiff, based on this evaluation, with generalized anxiety disorder and pseudohypoparathyroidism. (*Id.*) On December 15, 2005, Eugene Gennarelli, Ph.D., also conducted a consultative mental evaluation of plaintiff. (*Id.* at 191-94.) Dr. Gennarelli opined that plaintiff appeared "capable of understanding and following simple instructions and

3

directions," "performing simple and complex tasks" with and without supervision, making appropriate decisions, relating to and interacting appropriately with others, and dealing with stress. (*Id.* at 193.) Dr. Gennarelli diagnosed plaintiff with adjustment disorder, carpal tunnel, hypothyroidism, and spasms in knees and back. (*Id.* at 194.) Dr. Gennarelli recommended she continue psychiatric treatment. (*Id.*)

### B. Procedural History

Plaintiff applied for disability insurance benefits on April 18, 2005. (*Id.* at 46-49.) Her application was denied on February 13, 2006. (*Id.* at 23, 24-29.) Plaintiff and her representative appeared before the ALJ on March 17, 2008, after requesting a hearing. (*Id.* at 30, 339-75.) The ALJ issued a decision partially favorable to plaintiff, concluding that plaintiff was disabled as of February 25, 2004, but not prior to that date. (*Id.* at 6-19.) Plaintiff filed a timely appeal to the Appeals Council, which was denied on August 12, 2009. (*Id.* at 2-5, 335.) Plaintiff then filed this action on October 2, 2009, and the Commissioner served the administrative record and filed his answer on February 2, 2010. The Commissioner moved the Court for a judgment on the pleadings on May 3, 2010. On May 24, 2010, plaintiff responded and cross-moved for a judgment on the pleadings. The Commissioner replied on August 23, 2010. On August 30, 2010, plaintiff submitted a reply on her cross-motion. The motions are fully submitted and the Court has carefully considered the parties' arguments.

## II. DISCUSSION

### A. Standard of Review

A district court may only set aside a determination by an ALJ that is "based upon legal error" or "not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotations and citations omitted)). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

## B. The Disability Determination

A claimant is entitled to disability benefits under the SSA if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

## C. Analysis

### 1. The Five-Step Procedure

The ALJ concluded that plaintiff became disabled on February 25, 2004. (AR at 9.) The ALJ determined that "none" of plaintiff's jobs "attained the level of substantial gainful activity," but that plaintiff was incapable of being gainfully employed only as of February 25, 2004. (*Id.* at 18; *see also id.* at 11.) At step two of the analysis, the ALJ found that as of February 25, 2004, plaintiff had a severe disability

5

consisting of "chronic neck pain syndrome, right carpal tunnel syndrome," hypothyroidism, pseudo-hypoparathyroidism, "depressive disorder, NOS and generalized anxiety disorder and panic disorder." (*Id*. at 13.) After considering plaintiff's reported symptoms, objective medical evidence regarding plaintiff's condition, opinion evidence, and "other evidence" the ALJ concluded that plaintiff's impairments did not "significantly limit[] [her] ability to perform basic work activities" prior to February 25, 2004. (*Id*. at 12.) The ALJ specifically cited reports submitted by Dr. King, Dr. Angulo and Dr. D'Ariano, plaintiff's treating physicians, in support of his argument that plaintiff's condition was not severe prior to February 25, 2004. (*Id*. at 13.) At step three of the analysis the ALJ found that plaintiff's impairments did not fall into the categories automatically recognized by federal regulation as qualifying for disability. (*Id*. at 10, 16-17.) Nevertheless, at the fourth step of the analysis the ALJ concluded that as of February 25, 2004, plaintiff's residual functional capacity limited her "ability to function socially and respond appropriately to supervision, coworkers and usual work situations and deal with changes in a routine work setting." (*Id*. at 17.) In the last step, the ALJ determined that, while plaintiff was physically capable of performing some basic sedentary work, she was limited by her ability to cope with her work environment as of February 25, 2004 and was, thus, disabled. (*Id*. at 17-18.)

2. Severe Impairment

Plaintiff alleges that the ALJ did not consider "substantial evidence" that contradicted the ALJ's finding that plaintiff was not disabled before February 25, 2004. Namely, plaintiff asserts that the ALJ failed to consider: (1) the testimony of Barbara King, M.S., C.S.W.; (2) the testimony of plaintiff's father, Marc Temkin; and (3) evidence of plaintiff's poor work history and problems in school. Further, plaintiff argues that the ALJ: (1) misstated her testimony; (2) misconstrued the report from Dr. King; and (3) did not consider the clarifying information from Dr. Angulo. Plaintiff's arguments are without merit.

An impairment or combination of impairments is "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46. An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521. The claimant bears the burden of proving she has a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Furthermore, if the court finds that there is substantial evidence to support the ALJ's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *See Yancey*, 145 F.3d at 111; *Jones*, 949 F.2d at 59. For the reasons set forth below, the Court concludes that the ALJ carefully and fully considered all the evidence, provided detailed explanations for his findings, and had substantial evidence (including objective medical evidence from plaintiff's treating doctors) to support his conclusion that plaintiff was not disabled before February 25, 2004.

a. Objective Medical Opinions

The administrative record demonstrates that there is substantial medical evidence supporting the ALJ's decision that plaintiff did not have a "severe" disability prior to February 25, 2004. In his decision, the ALJ described medical evidence suggesting that plaintiff was physically able to perform only limited sedentary work as of February 25, 2004. (AR at 13, 123-31, 138-40, 229, 323-33.) Around that time plaintiff developed a condition affecting her spine, which caused her severe neck pain. (*Id.*; *see also supra* Section II.C.3.) The ALJ also outlined objective medical evidence demonstrating that plaintiff's psychological state was not severe prior to the established onset date. Dr. King's initial examination of plaintiff on May 6, 1999, did reveal symptoms consistent with depression over the two-year period prior to the visit, but also showed plaintiff's mental status was alert and fully oriented. (*Id.* at 163-64.) To the extent plaintiff had problems with depression prior to 2004, Dr. King reported that plaintiff's mood and anxiety showed modest improvement after adjustments were made with plaintiff's medication. (*Id.* at 164.) Plaintiff also had been able to work in sales and as a cashier despite her difficulty tolerating the stress of work, (*see, e.g. id.* 350-51), and medication seemed to bring plaintiff's attention deficit disorder under control, allowing her to maintain better focus, and increase her ability to stay on task. (*Id.* at 13.) In his report, Dr. King noted that the severity of plaintiff's problems became apparent over time and it was not until May of 2005 that he recommended that plaintiff curtail attempts to find work. (*Id.* at 164-65.) In short, it was not until May 2005, rather than 1999, that treating psychiatrist Dr. King assessed that plaintiff's mental condition posed functional limitations that significantly affected plaintiff's ability to work.[1]

---

[1] Although plaintiff argues that the ALJ "misconstrued the report from Dr. King," (Pl.'s Reply on Cross-Mot. at 3), a review of Dr. King's report demonstrates that argument is simply without merit. For example, Dr. King noted the following in connection with his initial evaluation of plaintiff in May 1999: "At the time of the initial evaluation, the patient's mental status demonstrated that she was alert and fully oriented. Her speech was fluent and goal directed. The patient had some difficulty making eye contact during the interview. The patient's mood was depressed and moderately irritable. Affective expression was narrow in range, varied in intensity and appropriate to ideation and situation. There was no evidence of formal thought disorder. The patient demonstrated no auditory hallucinations or other disorders of perception. Neither delusional ideation nor paranoid thought processes were manifest during the interview. The patient's memory was grossly intact. Although not formally tested, there appeared to be some deficit in the patient's cognitive function, particularly ability for abstract thinking. The patient demonstrated no suicidal ideation during the session and had no homicidal ideation. The patient's insight was superficial and her judgment considered to be fair." (AR at 164.) Moreover, he later noted that she began taking Concerta and "[t]his appeared to be useful as it allowed her to maintain better focus and an increased ability to stay on task" and "[h]er mood varied between neutral to moderate depression over time," although problems with concentration once again emerged in 2001. (*Id.*) Moreover, it is abundantly clear that her treatment plan was only modified as of the last session in May 2005 "such that attempts at pursuing gainful employment were curtailed" and a review of the totality of the report reveals why. (*Id.* at 165.) Thus, there is no question from a reading of Dr. King's report that plaintiff was not disabled in 1999. Therefore, the ALJ did not misinterpret the report in any way and it, along with the other objective medical evidence

Moreover, plaintiff's treating physician since 1991 for her pseudo-hypoparathroidism and hypothyroidism, Dr. Angulo, assessed no limitations in plaintiff's understanding and memory, sustained concentration and persistence, social interaction, or adaption, even as of April 2005.[2] (*Id*. at 139-40.) Thus, although plaintiff argues that the government's consultative examiners' conclusions (which support the ALJ's findings) do not constitute substantial evidence, plaintiff overlooks the fact that the ALJ relied upon not only the findings of the consultative examiners, but also relied upon the objective evidence from plaintiff's treating doctors (such as Dr. King, Dr. Angulo, and Dr. D'Ariano, *see supra* II.C.2.b) in finding that plaintiff had no functional limitations prior to February 25, 2004, and that finding is supported by substantial evidence.[3]

### b. Subjective Testimony of Pain and Functional Limitations

Aside from objective medical facts, the ALJ must consider subjective evidence of pain and disability in his "severity" analysis,

---

in the record, constitutes substantial evidence to support his conclusion.

[2] Plaintiff argues that the ALJ failed to consider "the clarifying information" from Dr. Angulo. (Pl.'s Reply on Cross-Mot. at 3.) However, the Court rejects that argument. Dr. Angulo's report, from April 2005, is very explicit in concluding that he identified no functional limitations imposed by her conditions as of April 2005, including no limitations in plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaption. (AR at 139-40.) The "clarifying information" cited by plaintiff, (*id*. at 180-81), does not disavow those findings; rather, the report states that Dr. Angulo described certain physical limitations and, with respect to mental manifestations, stated (according to the writer of the report) that plaintiff "[h]as mental manifestations consisting of emotional lability and low IQ" and "that her performance in any prior employment was probably very suboptimal because of the psychiatric and low intelligence." (*Id*. at 180.) This clarification does not alter the fact that Dr. Angulo's report—consistent with all of the other objective evidence—clearly supports the ALJ's finding that plaintiff was not disabled prior to February 25, 2004, due to any physical or mental impairment. Thus, the ALJ's failure to mention Dr. Angulo's "clarifying" report is not an error.

[3] Although plaintiff argues that the ALJ failed to specifically address social worker Barbara King's report and such report supports finding an onset date in 1999, the Court strongly disagrees. First, the document relied upon by plaintiff is not a thorough "report" but rather a cursory, one-page letter written to plaintiff's counsel in March 2008. (AR at 333.) Second, the letter indicates that Ms. King only began seeing plaintiff for psychotherapy in August 2000, and they met for an "extensive period, then intermittently." (*Id*.) Third, and most importantly, there is nothing in that letter that would provide a basis for concluding that plaintiff was disabled prior to February 2004. The letter simply describes, in very general terms, "panic attacks when she was in a position of authority or when she felt she was in something over her head" and a history of depression. Moreover, the only conclusion reached in the letter is that, *as of March 2008*, "[s]he continues to experience psychiatric illness that makes [it] difficult for her to be gainfully employed and, on the basis of this, is permanently disabled." (*Id*. at 333.) It simply provides no basis for concluding that she was disabled prior to February 25, 2004, and in no way undermines the substantial evidence supporting the ALJ's conclusion. Thus, the ALJ's failure to explicitly mention it does not require reversal or remand.

8

*see Mongeur*, 722 F.2d at 1037, including evidence from non-medical sources such as statements or reports from the claimant and testimony from relatives. *See* 20 C.F.R. §§ 404.1529(a), 404.1513(d)(1). Subjective symptoms, however, are insufficient to establish a person's disability under the SSA unless there are medical signs and laboratory findings showing that a medical impairment could reasonably be causing the pain or other symptoms. S.S.R. 96-7p; *see also* 20 C.F.R. §§ 404.1529(d)(1), 416.929(d)(1). Additionally, when a claimant's statements about her pain and disability suggest a greater severity of impairment than the objective medical evidence shows by itself, the Commissioner considers relevant factors such as the following: the claimant's daily activities; the nature, location, onset, duration, frequency, and intensity of her pain; factors that precipitate or aggravate claimant's pain or disability; the type, dosage, effectiveness, and side effects of medication; any other treatment; and any other measures the claimant used to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p.

In the instant case, the ALJ properly considered the plaintiff's subjective testimony of pain and functional limitations and found such testimony not to be credible.[4] In particular, he concluded:

"After considering the evidence of record, the undersigned finds that the claimant's current medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to February 25, 2004, to the extent they are inconsistent with finding that the claimant had no severe impairment or combination of impairments for the reasons explained below." (AR at 13.) The ALJ then proceeded to explain in detail how the objective medical evidence, including the evidence from her treating doctors, contradicted her subjective testimony on plaintiff's pain and functional limitations. (*Id*.) In fact, plaintiff's testimony was inconsistent with some of her prior statements. For example, in her Disability Report to the Social Security Administration plaintiff, after listing her impairments, reported that her various medical conditions did not begin to bother her until April 2004, (*id*. at 66), which is consistent with what she told Dr. D'Ariano and her physical therapist about experiencing a sudden onset of debilitating neck pain. (*Id*. at 155-56.) Finally, although plaintiff argues that the ALJ did not specifically mention the testimony of her father, Marc Temkin, regarding her

---

[4] As an initial matter, plaintiff asserts that the ALJ misstated her testimony when he stated in his decision that plaintiff had bouts of depression "for about a month" but then would have "long periods" of not being depressed. (AR at 13.) During the hearing, plaintiff testified that she was not depressed for "[m]aybe one month at a time, one month and then it would come . . . ." (*Id*. at 354.) Although it is unclear for how long plaintiff remained depressed, plaintiff's testimony nevertheless shows that she had bouts of depression that came and went. In any event, to the extent that the ALJ may have misinterpreted plaintiff's statement, it was not dispositive to the ALJ's determination that plaintiff was not credible; rather, as discussed in detail above, it is abundantly clear that his credibility determination of plaintiff was based upon the fact that her statements were clearly contradicted by the objective medical evidence, and this Court concludes that there was substantial evidence to reject her testimony and to support the ALJ's determination that plaintiff was not severely disabled prior to February 25, 2004.

9

symptoms, her father's testimony at the hearing supports, rather than contradicts, the ALJ's conclusion that she did not have a severe impairment prior to February 25, 2004. For example, Mr. Temkin testified at the administrative hearing that, while plaintiff had many physical, mental, educational, and employment troubles prior to 2004, "that was not a particularly bad period" for plaintiff.[5] (*Id.* at 365.)

According to Mr. Temkin, plaintiff's problems grew worse as she got older, culminating in 2004: that year plaintiff held a number of jobs for only a few weeks each. (*Id.*) In short, the ALJ properly evaluated plaintiff's credibility in light of the evidence in the record, including the evidence from her own treating doctors, and properly rejected as not credible her statements regarding her symptoms and limitations prior to February 25, 2004.

### 3. Onset of Disability

Plaintiff alleges that the ALJ provided no explanation for his determination that plaintiff became disabled on February 25, 2004. The ALJ's decision, however, does indicate an explanation that is supported by substantial evidence on record. The onset date for plaintiff's disability "is the first date on which [she] is unable to engage in any substantial gainful activity" for no less than twelve months as a result of a "medically determinable physical or mental impairment." *McCall v. Astrue*, No. 05 Civ. 2042 (GEL), 2008 WL 5378121, at *17 (S.D.N.Y. Dec. 23, 2008) (quotation marks omitted). Social Security Ruling 83-20, which is binding on all decision makers within the Social Security Administration, *see Heckler v. Edwards*, 465 U.S. 870, 874 n.3 (1984), outlines instructions on how to determine the onset date of a disability. For disabilities of non-traumatic origin, as is the case here, "the determination of onset

---

[5] Plaintiff also argues that the ALJ failed to consider testimony from plaintiff and her father regarding her childhood and school problems, as well as her work history, and evidence from social worker Barbara King. (*See supra* II.C.2.a n.3.) As a threshold matter, the ALJ noted that his findings were based "on a consideration of the entire case record[,]" (AR at 12), and he specifically noted statements regarding Plaintiff's schooling and work history. (*See, e.g., id.* at 16 ("Ms. Temkin reported that she was a high school graduate and had been in regular classes while in school. Ms. Temkin further reported that since September 2005, she has been working as a library assistant and works 25 hours a week."); *Id.* at 18 ("The undersigned notes that the claimant has had many jobs, but that none of her jobs attained the level of substantial gainful activity.").) Moreover, the ALJ explicitly discussed in detail plaintiff's medical signs, laboratory findings, diagnoses, medical opinions, medical history, treatment and daily activities in his decision. (*See id.* at 12-17.) The support for the ALJ's conclusions is extremely clear and compelling, and claimant points to no testimony or evidence that undermines the substantial evidence supporting his decision. Thus, as the Second Circuit has noted, "[w]hen, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur*, 722 F.2d at 1040; *accord Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)

("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony . . . ."). Thus, the failure of the ALJ to mention every piece of testimony or evidence in this case, including the ones cited by plaintiff, does not require reversal or remand in this case.

involves consideration of the applicant's allegations, work history, if any, and the medical or other evidence concerning impairment severity." S.S.R. 83-20; *see also McCall*, 2008 WL 5378121 at *17; *Felicie v. Apfel*, No. 95 Civ. 2832 (LAP), 1998 WL 171460, at *3 (S.D.N.Y. Apr. 13, 1998). Although the starting point for determining the onset date is the applicant's own allegation of the start of her disability, "medical evidence serves as the primary element in onset determination." S.S.R. 83-20. The onset date can be "determined from reasonable inferences based on the available medical evidence" where the illness in question is slowly progressive. *Telfair v. Astrue*, No. 04 Civ. 2122 (JGK), 2007 WL 1522616, at *5-6 (S.D.N.Y. May 15, 2007). The established onset date "must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *See* S.S.R. 83-20; *Telfair*, 2007 WL 1522616, at *5. The ALJ's decision must be supported by substantial evidence and the ALJ must give convincing rationale for the date selected. *Telfair*, 2007 WL 1522616, at *4-5; *Jeffcoat v. Astrue*, No. 09-CV-5276 (KAM), 2010 WL 3154344, at *11 (E.D.N.Y. Aug. 6, 2010) (citing *McCarthy v. Astrue*, No. 07-cv-300, 2007 WL 4444976, at *7 (S.D.N.Y. Dec. 18, 2007)).

The ALJ's opinion provides a detailed and convincing explanation, supported by substantial evidence, for why February 25, 2004, was determined to be the onset date of plaintiff's disability. The ALJ stated in his opinion, among other things, that "[b]eginning on February 25, 2004, the claimant has had the following severe combination of impairments: chronic neck pain syndrome, right carpal tunnel syndrome, pseudohypothyroidism, hypothyroidism, depressive disorder, NOS and generalized anxiety disorder and panic disorder." (AR at 13.) The ALJ noted in his decision that although plaintiff had physical limitations as a result of various medical problems, evidence on record with respect to plaintiff's physical capabilities demonstrated that plaintiff was able to perform some limited sedentary work. (*Id*. at 13, 17-18, 123-31, 139-40.) However, the ALJ noted that plaintiff's limited physical abilities, in combination with her mental condition, caused her to become disabled. (*Id.* at 13, 17-18.) The ALJ selected February 25, 2004, in particular as plaintiff's onset date because it was at that time that plaintiff's physical and mental problems became exacerbated consistent with both medical testimony and plaintiff's own statements. For example, on May 25, 2004 plaintiff reported increasing problems with neck pain to Dr. D'Ariano. (*Id.* at 13, 156-57.) Plaintiff stated that the pain began "a few weeks" prior to the appointment. (*Id.* at 156, 166.) After subsequent evaluations, plaintiff was diagnosed with a degenerative herniated disc and cervical radiculopathy. (*Id.* at 148-54.) The ALJ's opinion makes clear that he considered the onset of plaintiff's neck pain and spine problems as the turning point in plaintiff's condition that lead to the limitations on plaintiff's ability to work. (*Id.* at 13-16.) The onset date set by the ALJ is three months prior to the May 25, 2004 appointment plaintiff had with Dr. D'Ariano. Although plaintiff reported symptoms of neck pain for only a few weeks prior to the appointment, the ALJ more generously determined the onset date to be three months rather than a few weeks prior to the appointment. The ALJ's decision is consistent not only with the objective medical evidence (including the findings of the treating and examining physicians), but also with certain of plaintiff's own statements and the testimony of her father. As noted *supra*, plaintiff herself indicated

11

that she was unable to work solely as of April 2004 due to her disability. (*Id*. at 66.) In addition, plaintiff's father testified that it was not until 2004 that plaintiff's psychological problems became notably worse as evidenced by plaintiff switching jobs after working for very short periods of time. (*Id*. at 365.) Therefore, there is substantial evidence to support and convincing rationale for the ALJ's determination that February 25, 2004 was the onset date of plaintiff's disability.

4. Consideration of List of Impairments

Plaintiff also argues that the ALJ committed legal error by failing to consider the List of Impairments in Section 9.04, *see* 20 C.F.R. Part 404, Sub Part P, Appendix 1 (hereinafter "Listing 9.04"), to determine whether plaintiff had a qualifying condition prior to February 25, 2004, that fit into one of the listed categories. More specifically, Listing 9.04 pertains to hypoparathyroidism, which is met or equaled when a person has the condition with "(A) [s]evere recurrent tetany; or (B) [r]ecurrent generalized convulsions; or (C) [l]enticular cataracts." Plaintiff contends that, because she suffers from pseudo-hypoparathyroidism and hypothyroidism, the ALJ should have specifically considered whether her conditions met or equaled this listing. Plaintiff further argues that, despite the absence of any medical evidence to support the conclusion that she met this listing, there is evidence she may meet or equal Listing 9.04(B) based upon her father's testimony that she used to experience grand mal seizures before her condition was diagnosed as pseudohypoprathyroidism. As set forth below, the Court finds this argument to be without merit.

The ALJ found that "[t]he claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d))." (AR at 16.) In reaching this finding, the ALJ explained that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.* at 17.) The ALJ further noted, in reaching this conclusion, that he had "considered the opinion of the State Agency medical consultants who evaluated the initial and reconsideration levels of the administrative review process and reached the same conclusion that the claimant's impairments do not meet or equal a Listing (20 CFR 404.1527(f), 416.927(f) and Social Security Ruling 96-6p)." (*Id.* at 17.) Finally, the ALJ noted that he had "specifically reviewed Listings 1.00, et.seq., 11.00 et.seq. and 12.00 et.seq." (*Id.*)

Thus, although the ALJ did not specifically reference Listing 9.04(B), it is clear from the record that he was not limiting himself to the specific listings mentioned, but rather had determined that plaintiff had not met the criteria for "any listed impairment." In short, the record suggests that he considered the potential application of any listing. Moreover, although plaintiff faults the ALJ for failing to specifically mention and reject Listing 9.04(B), that "failure" is hardly surprising given that there was no medical or other evidence to demonstrate that the requirements of Listing 9.04 were met. In particular, there is a complete absence in the record of any evidence of tetany, generalized convulsions or cataracts after May 6, 1999. The only evidence relied upon by plaintiff on this issue is her father's testimony at the hearing, in which he stated

that, once plaintiff was properly diagnosed and began receiving proper treatment at the age of five or six, she ceased experiencing grand mal seizures and, after that time, only "occasionally" experienced "tension or small seizures in the extremities" that were "minor." (*Id.* at 370.) Therefore, even the testimony of plaintiff's father shows that plaintiff did not experience either severe recurrent tetany or recurrent generalized convulsions. Moreover, as noted above, the ALJ emphasized that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.* at 17.) Dr. Angulo, plaintiff's physician treating her for hypoparathyroidism, further confirms this conclusion and Mr. Temkin's testimony, noting that plaintiff solely suffers from contractures and not generalized convulsions. (*Id.* at 134, 139.) *See Dunivan-Bennett v. Astrue*, No. 1:08CV0108 AGF, 2009 WL 2957908, at *6 (E.D. Mo. Sept. 10, 2009) ("Here, there is no evidence to undermine the ALJ's determination . . . that Plaintiff's physical impairments did not meet or equal a listed impairment. The specific references to the medical record that Plaintiff cited in her brief . . . and references showing low calcium levels, do not show the existence of the requirements to meet Listing 9.04."). In short, there is no basis to conclude that the ALJ failed to consider all of the listed impairments, and the rationale for the ALJ's conclusion, that plaintiff failed to meet her burden of proof and establish that her impairments were severe enough to satisfy the criteria of Listing 9.04 or any other listed impairment, is clear and is supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("[I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."); *accord Zatz v. Astrue*, 346 Fed. App'x 107, 110 (7th Cir. 2009) (summary order) ("[A]n ALJ's failure to explicitly refer to a particular listing does not require automatic reversal, especially where, as here, the ALJ's consideration of the listing is apparent from the record.").

\* \* \*

In sum, based upon a careful review of the administrative record, the Court concludes that the ALJ properly considered all of the evidence, explained in detail the basis for his findings, and there is substantial evidence to support the findings: (1) that plaintiff had not established that she was disabled prior to February 25, 2004; (2) that plaintiff's disability onset date was February 25, 2004; and (3) none of plaintiff's impairments met or equaled any of the requirements of a listed impairment.

IV. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is granted and plaintiff's motion for judgment on the pleadings is denied. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 4, 2011
Central Islip, New York

* * *

The attorney for plaintiff is David E. Tobias, Esq. of Turley, Redmond, Rosasco & Rosasco, LLP, 3075 Veterans Memorial Hwy, Ste. 200, Ronkonkoma, New York 11779.  The attorney for defendant is Loretta E. Lynch, Esq., Assistant United States Attorney, Eastern District of New York, 610 Federal Plaza, Central Islip, New York, 11722.